## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Maria U.C.G., | Civ. No. 26-439 (JWB/LIB) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

Taylor Jon Volkman, Esq., Taylor Volkman, Esq., counsel for Petitioner.

Friedrich A. P. Siekert, Esq., and Ana H. Voss, Esq., United States Attorney's Office, counsel for Respondents.

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) after previously releasing her from custody under 8 U.S.C. § 1226 and placing her in removal proceedings under 8 U.S.C. § 1229. The answer is no. Because Respondents previously exercised authority to release Petitioner Maria U.C.G. under § 1226, that statute—not § 1225—governs detention while removal proceedings remain pending.

Respondents' position has been often rejected in this District. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose*

*J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Therefore, the Petition is granted to the extent that it requests release.

## BACKGROUND

Petitioner is a citizen of Ecuador. (Doc. No. 1, Petition ¶¶ 2, 9, 15.) United States Border Patrol encountered her near Hidalgo, Texas on November 16, 2022. (*Id.* ¶ 15; Doc. No. 8-1, Resp. Ex. A at 1; Doc. No. 8-2, Resp. Ex. B at 1.) She was issued a Notice to Appear designating her "an alien present in the United States who has not been admitted or paroled" and charging inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). (Resp. Ex. A.) The Notice placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a (*see id.*), which governs full removal proceedings before an Immigration Judge. She was then released from custody on her own recognizance. (Resp. Ex. B at 3.)

The standard Order of Release on Recognizance, Form I-220A, states that the noncitizen is being released "[i]n accordance with section 236 of the Immigration and Nationality Act," which corresponds with § 1226. Neither side submitted evidence showing that order was ever cancelled or revoked in Petitioner's case.

Petitioner alleges that she has a pending application for asylum, has a valid work permit, and has no criminal record. (Petition ¶¶ 15–16.)

On January 19, 2026, Immigration and Customs Enforcement ("ICE") agents apprehended Petitioner and her daughter at their home in Richfield, Minnesota. (*Id.* ¶¶ 2, 17.) Petitioner alleges that the agents did not show a warrant or other paperwork at that time. (*Id.* ¶ 17.) Petitioner remains in ICE custody. (*Id.* ¶ 2.)

**DISCUSSION**

## I.    Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

## II.    Analysis

Petitioner challenges only the lawfulness of her detention under federal law. She does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which

3

immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that process and generally requires detention. *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149.

Section 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Respondents assert that Petitioner is subject to § 1225(b)(2), which mandates detention of certain "applicants for admission" pending removal proceedings. The vast majority of district courts considering that assertion, including this Court, have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens released to the interior of the country like Petitioner. *See Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025); *Khalid B.Q. v. Bondi*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 (D. Minn. Dec. 19, 2025). Respondents' examples of recent orders agreeing with their statutory interpretation do not alter the outcome.

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents have often cited to it as if it reflects an independent adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates

under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the INA for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position. *See* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) (memo from DHS requiring that all "applicants for admission" be detained under § 1225(b)(2) during removal proceedings).

And even if *Yajure Hurtado* were such an independent interpretation, it would run headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025).

In habeas review, the question is not whether the Executive Branch has spoken with one voice—whether through the DOJ or BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688 ("[T]he habeas statute … does not require courts to defer to the Attorney General's interpretation of the statute. Rather, it requires the courts to determine whether the detention is lawful.").

The analysis here is straightforward. Respondents placed Petitioner in removal

proceedings under § 1229a, released her from custody under § 1226, and allowed her to remain in the community for more than three years. Nothing in the record suggests Respondents ever revoked that release based on flight risk, danger, changed circumstances, or any other reason.

Section 1225(b)(2) provides no authority to revisit that custody determination later. The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836–38. Nothing in § 1225 authorizes Respondents to revive mandatory detention just by recharacterizing a previously released noncitizen as an applicant for admission. *See, e.g.*, *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025). The statute contains no mechanism for that switch. Allowing Respondents to toggle between detention regimes in this way would collapse the statutory structure Congress enacted and render § 1226 largely superfluous.

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is unlawful. *See Khalid B.Q.*, Civ. No. 25-4584, Doc. No. 10 at 6; *Xuseen A.*, Civ. No. 25-4514, Doc. No. 16 at 7. Thus, she is entitled to a writ of habeas corpus that grants her immediate release subject to the conditions in her original Order of Release on Recognizance. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Respondents argue that if Petitioner has been misclassified under § 1225, the proper remedy is a bond hearing under § 1226 rather than release. But a bond hearing presupposes lawful detention authority under § 1226. Where that authority has not been

6

invoked or established, ordering a bond hearing would treat the absence of statutory

power as a mere procedural irregularity rather than a substantive defect. Habeas relief

requires more because it addresses the lawfulness of custody itself, not the adequacy of

procedures that might attend some other, uninvoked challenge to detention. *See Wajda v.*

*United States*, 64 F.3d 385, 389 (8th Cir. 1995). For detention that lacks a lawful

predicate, release is an available and appropriate remedy. *Munaf*, 553 U.S. at 693.

Where the record shows Respondents have not identified a valid statutory basis for

detention in the first place, the remedy is not to supply one through further proceedings.

Because Petitioner has shown Respondents have not invoked a provision of the INA that

authorizes her continued detention, the petition for a writ of habeas corpus is granted, and

Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1.      Petitioner Maria U.C.G.'s Petition for Writ of Habeas Corpus (Doc. No. 1)

is **GRANTED**.

2.      **Release.** Respondents shall immediately release Petitioner from custody.

She must be released in Minnesota and subject to any conditions of her November 2022

release.

If Petitioner is currently held outside Minnesota, Respondents shall immediately

initiate Petitioner's return to Minnesota for the sole purpose of effectuating release.

Respondents shall not delay initiation of return based on administrative convenience,

transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3.      **Notice.** Within 48 hours of this Order, Respondents shall file an update on the status of Petitioner's release. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4.      Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

5.      Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 24, 2026                    *s/ Jerry W. Blackwell*
                                          JERRY W. BLACKWELL
                                          United States District Judge

8